Ridgway v. Bowman.

---

## JOHN W. RIDGWAY *vs.* FRANCIS BOWMAN.

A bill of sale, containing an inventory of the articles, and adding, " said property being subject to " certain mortgages specified, is a bill of sale of all the property in the inventory, although some of the articles are not covered by the mortgages; and cannot be controlled by parol evidence, that the words, describing the property as being subject to mortgage, were added for the purpose of limiting it to the mortgaged articles. And such bill of sale, when delivered to the vendee, with notice to the person in whose hands the property is, passes the title to all the property, although the vendor, at the time of such notice, delivers the mortgaged property only to the vendee, and declares that he delivers no other.

In an action to recover property included in a bill of sale purporting to be executed by the plaintiff to the defendant, an instruction given by the court to the jury, " that, if they should find that the parties had deliberately reduced their contract to writing by the bill of sale, and had therein specified the property in question in such terms as imported a legal conveyance of the same, and there was no uncertainty as to the subject matters intended to be conveyed, parol evidence of

conversations between the parties should not be regarded by them to contradict or vary the written conveyance," is not open to exception, as leaving questions of law to the jury.

This was an action of trover, brought by the plaintiff, as assignee in insolvency of N. E. Nims & Company, and was tried in the court of common pleas before *Perkins*, J., who signed the following bill of exceptions:

The evidence at the trial tended to prove, that the plaintiff was duly appointed assignee of Nims & Company, on the 19th of February, 1847; that the goods and chattels which were the subject of the action, were formerly the property of Nims & Company, and were, at the time of the alleged conversion, in the livery stable and riding school kept by them in Boston, and were duly demanded of the defendant by the plaintiff before the commencement of this action; that they were a part of the stock of the said livery stable and riding school; and that the whole stock, with the exception of the property in question, and the further exception of three horses, was subject to three mortgages previously made by Nims & Company: That, on the 24th of February, 1849, the plaintiff gave to the defendant an instrument purporting to be a bill of sale of the property in the livery stable and riding school, enumerating and specifying the several articles, and embracing the articles in question, under which bill of sale the defendant claimed title to the same; that, on the same day, after the execution of this instrument, the plaintiff went with the defendant to the said stable, for the purpose of making a delivery of the property purchased by the defendant; and then and there requested H. C. Nims, who had charge of the property, and who had been in the employment of Nims & Company, to produce some article of the mortgaged property, that he might deliver it to the defendant, and that said Nims pointed to a carriage which stood near them, and told them that was included in the mortgage; that the plaintiff then requested said Nims to witness that he delivered to the defendant the mortgaged property, and no other; that the defendant had since stated that he had purchased the mortgaged property, and no other; and that the consideration of said

23 *

sale by the plaintiff to the defendant was $150, and that the property in controversy was worth about $450.

A counsellor at law, who was called as a witness by the plaintiff, testified that, on the 24th of February, 1849, the parties came to his office together, and produced an instrument, headed " Inventory of the property belonging to the firm of N. E. Nims & Co.," which paper was proved to be in the handwriting of one of said firm; and that he wrote before the words above mentioned the following : " Francis Bowman bought of J. W. Ridgway, assignee of the estate of N. E. Nims & Co.," and at the close of said instrument he wrote as follows : " Said property being subject to one mortgage for $4,080 to Joseph Manning, Jr., one mortgage to Abel Cushing, Jr., for $3,880.60, and one mortgage to S. G. Cheever for $1,802.50; in all, $9,716.63 ; said sum including interest on said mortgagees' demand. Boston, February 24, 1849." No evidence was offered to show that the plaintiff did not know the contents of the bill of sale. But the plaintiff offered to prove by this witness that he, (the plaintiff,) when said bill of sale was prepared, stated to the defendant that he thereby conveyed to him only the mortgaged property ; and that the clause last above mentioned was intended by both parties, and was written by the witness, for the purpose of limiting and confining the bill of sale to the mortgaged property.

The presiding judge rejected the evidence as incompetent, and instructed the jury that, if they should find that the parties had deliberately reduced their contract of sale to writing, by the bill of sale, and had therein specified the property in question in such terms as imported a legal conveyance of the same, and there was no uncertainty as to the subject matter to be conveyed, or the extent of the engagement created by such conveyance, the bill of sale must be allowed to speak for itself, and parol evidence of previous conversations, or of conversations at the time when the instrument was completed, or afterwards, as to what was intended to be conveyed, or to show what was meant by the instrument, should not be regarded by them to contradict or vary the written conveyance.

The jury returned a verdict for the defendant, and the plaintiff excepted.

*W. Hilliard*, for the plaintiff.

*H. Wellington*, for the defendant.

SHAW, C. J. This is an action of trover for a portion of the stock of a livery stable and riding school, brought by the assignee of an insolvent firm. A large proportion of the stock, consisting of horses and carriages, was under mortgage; but the portion now in controversy, a few hundred dollars' worth, was not mortgaged. The case finds that the plaintiff gave the defendant an instrument, purporting to be a bill of sale of the property in the stable and riding school, enume-rating and specifying the several articles, embracing those sued for in this action, under which bill of sale the defendant claims title to the same. In the afternoon of the same day, the parties went to the stable to make delivery; and the plain-tiff, in making delivery, said that he delivered the mortgaged property, and no other, and no further explanation was made. The whole property is described and specified in an inventory, as conveyed, and is described as subject to three mortgages specified, with the amounts due thereon, including interest.

The plaintiff offered to prove by the counsellor at law, by whom the inventory was converted into a bill of sale, that when it was prepared, the plaintiff stated to the defendant, that he conveyed thereby to him only the mortgaged pro-perty; and that the last clause was intended by both parties, and was written by the witness, for the purpose of limiting and confining the bill of sale to the said mortgaged property. This evidence was rejected as incompetent and inadmissible. The court are of opinion that this evidence was rightly re-jected, on the ground that it was an attempt to vary and control a written instrument by parol evidence. The case is quite distinguishable from that of *Blood* v. *Harrington*, 8 Pick. 552. Here, the instrument was offered and relied upon, as the contract of sale and proof of title; it was essential to the case, specified the terms of sale and the mortgages to which the property was subject. The offer of the evidence was an attempt to show, that a part of the articles, clearly

contained in the description of the property conveyed, were not intended to be conveyed — against the settled rule.

2. It is attempted to put it on the ground of latent ambiguity. We perceive no latent ambiguity. The sale was of the articles contained in the inventory of the property of the late firm of Nims & Company. In applying this description to the property, none other appeared, or was claimed, besides that comprehended in the description. It is very probable that there was a mistake, either in not knowing the condition of the property, or in reducing the contract to writing; but such mistake, if made, cannot be corrected by parol evidence.

3. It is then urged that the first description is controlled by the last clause, "being subject to mortgage;" but it cannot be so construed. These words are part of the description of the whole property. If the words had been, being the same contained in a specified mortgage, or any words of restriction to those mortgaged, it might have let in parol evidence to ascertain what would fall within the description. But it describes them all to be subject to certain mortgages, definitely described; and the obvious purpose seems to be, to give distinct notice of the amount of encumbrances upon the property conveyed.

4. The plaintiff then relies on the limited and qualified delivery, to restrict the operation of the contract of sale. This is another attempt to controvert a written contract, by matter resting solely in parol proof. But if it were good in law, it would not apply. No specific delivery of the property was necessary to give effect to the sale. The delivery of a bill of sale of property in the hands of a third person, with notice to such person, passes the property. But the delivery was coincident with the conveyance; the conveyance was of the whole property in the inventory, the whole being subject to certain mortgages; the delivery of the mortgaged property was equivalent to a delivery of the conveyed property, the whole being described as under mortgage. No distinction was then made; no statement that all the property in the stable and riding school was not mortgaged property.

5. The last exception is, that questions of law were left to

the jury. This seems to be a mere criticism on the words of the report, not well founded. The meaning is obvious. The terms are, " the court instructed the jury, that *if* they should find that the parties had deliberately reduced their contract to writing, and had therein specified the property in question in such terms as imported a legal conveyance of the same, and there was no uncertainty as to the subject matters intended to be conveyed," &c., then parol evidence of conversations between the parties should not be regarded, &c. Perhaps, in strict grammatical terms, the whole, both law and fact, is put hypothetically; the meaning is, if the jury find that the paper was executed, which is a question of fact for their determination, then it imported a legal conveyance of the property, which parol evidence was inadmissible to contradict or vary — declaring the law. We think there is no ground for this exception. *Exceptions overruled.*